## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT D. MCKENNA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CV-07-BE-0966-S** |
| | ) | |
| **CITY OF BIRMINGHAM, a municipal** | ) | |
| **corporation, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion for Summary Judgment (doc. 23). The parties have fully briefed the motion. Pursuant to the court's review of all pertinent filings and the applicable law, the court finds that the Defendants' Motion for Summary Judgment (doc. 23) is due to be GRANTED as to all federal causes of action, as set forth below. The court DISMISSES the remaining state law claims. A separate order to that effect will be entered simultaneously.

## I. FACTS

Plaintiff Robert McKenna, who is wheelchair-bound due to a spinal cord injury, purchased property located at 2908 Highland Avenue in Birmingham, Alabama, in April 2004. For sixty years prior to McKenna's purchase of the property, the Alabama Federated Women's Clubs of the Third District ("AFWC") had used it as a meeting place. Following McKenna's purchase of the property, the AFWC continued to use the property as a meeting place. The property is zoned R-5 Multiple Family Residential, which entitles McKenna to uses of the

following kinds:

> Religious, education, charitable or public institution or building, except a penal or mental institution or a communal living facility. Permitted uses are schools, churches, and residential accessory uses limited to rectories, personages and dwellings for residential administrators, watchmen, custodians or caretakers.

Zoning Ordinances of the City of Birmingham, Art. 1 § 7(2) ¶ 6.  Prior to purchasing the property, McKenna spoke with officials at the Birmingham Department of Planning, Engineering & Permits ("PEP Department") and came to the understanding that he could reside on the property as the resident caretaker and that AFWC could continue using the property as its meeting place.

In May 2004, McKenna returned to the PEP Department to obtain a permit to install a residential elevator to allow him wheelchair access to the residential quarters on the second floor of the property.  At that time Janet Keasler, a Zoning Inspector with the PEP Department, told McKenna that his property was "grandfathered in" to have a resident caretaker live on the premises, because the AFWC had housed a live-in caretaker on the premises for nearly sixty years.  However, Keasler also told McKenna that while a caretaker could live in the building, McKenna could not be that caretaker "because [her] boss said so."  During August 2004, the elevator was installed in the building, inspected, and ultimately approved by the PEP Department.

In late 2004, McKenna voted against the incumbent in favor of a write-in candidate for president of the Highland Park Neighborhood Association ("HPNA").  The incumbent, Allison Glascock, won the election, but the write-in candidate, Doug Blank, contested her victory.  Blank decided not to run after the City Council granted him a new vote, so McKenna filed candidacy

forms to run in Blank's place.  Because McKenna had not signed the attendance lists at four

neighborhood association meetings within the previous year, a prerequisite to running for

president of the HPNA, Glascock contested his ability to run against her.

Glascock emailed Tom Magee, Phil Turkett's superviser at the PEP Department, on

February 14, 2005, stating that, before her election was done, she might need the letter Magee

wrote to the AFWC that stated McKenna could not live at 2908 Highland Avenue before her

election was done.  Glascock emailed Magee again on February 17, providing evidence that

McKenna was allegedly in violation of the zoning ordinances and asking if that evidence was

enough for the PEP Department to investigate.

Keasler sent a letter to McKenna on February 17, 2005,  notifying him that he was in

violation of the Zoning Ordinances of Birmingham, because the property was being used as a

meeting place and a residence.  When McKenna called the PEP Department regarding the letter,

Keasler and Phil Turkett, the Zoning Supervisor, advised him that he was not allowed to reside

on the property as the caretaker.  To that effect, Keasler signed an affidavit on March 22, 2005,

stating that McKenna's use of his residence to operate a private club violated the Zoning

Ordinances.

After the PEP Department received an anonymous complaint regarding McKenna's

zoning violations a criminal warrant charging McKenna with operating a business in a residential

area was issued pursuant to Keasler's affidavit.  On November 2, 2005, two Birmingham police

officers went to McKenna's residence and arrested him pursuant to the warrant.  The officers

would not grant his requests to drive his own handicapped-equipped vehicle to the station, nor

did they give him time to collect any of his medications.  The police detained McKenna for

3

eleven hours without the use of handicapped-accessible restroom facilities, which resulted in his having to catheterize his bladder in front of everyone in the booking area of the station.  While at the station, the police photographed and fingerprinted him.   Due to his disability, McKenna's fingers do not straighten without pain, so the fingerprinting conducted by the officers caused him physical pain.

Throughout 2005 and into 2006, Glascock continued to email the PEP Department regarding the status of McKenna's violation investigation, asking when the warrant would be served, pushing the PEP Department to process the warrant more quickly, noting that McKenna was causing her trouble by trying to run for president of the HPNA, and commenting on the eventual outcome of McKenna's violation trial.  On April 12, 2006, the Birmingham Municipal Court found McKenna not guilty of violating the zoning ordinance.

The City of Birmingham entered into a Settlement Agreement with the United States Government on July 25, 2005, to remedy, among other things, several facilities and services of the City Jail that were deficient under the Americans with Disabilities Act (ADA) and the Federal Rehabilitation Act (FRA).

## II.  PROCEDURAL HISTORY

As a result of these events, McKenna filed suit in the Circuit Court of Jefferson County, alleging false arrest, unreasonable seizure, false imprisonment, malicious prosecution, invasion of privacy, intentional infliction of emotional distress, negligent supervision, negligence, conspiracy, violations of the Americans with Disabilities Act ("ADA"), violations of the Federal Rehabilitation Act ("FRA"), violations of his substantive and procedural due process rights, and violations of his right to equal protection.  McKenna named as defendants the City of

4

Birmingham, William Gilchrist (Director of the Birmingham PEP Department), Janet Keasler (a Zoning Inspector), and Phil Turkett (the Zoning Supervisor).[1]

The defendants filed a notice of removal (doc. 1) on May 24, 2007, pursuant to 28 U.S.C. §§ 1441 and 1443, because this court has original jurisdiction over the matter under 28 U.S.C. §§ 1331 and 1343.  Thereafter, the defendants moved for summary judgement (doc. 23).  The parties have fully briefed the motion for summary judgment.

The plaintiff concedes dismissal of his conspiracy and intentional infliction of emotional distress claims against the City of Birmingham.  (Supplement to Pl.'s Resp. 3).   He also concedes dismissal of his procedural due process and negligent supervision claims against all defendants.  (Supplement to Pl.'s Resp. 3).   Accordingly, the court will dismiss those claims and consider only the remaining claims on this motion for summary judgment.

### III. STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

---

[1] The complaint also listed eighteen fictitious defendants; because federal procedure does not recognize fictitious party pleading, those defendants are hereby DISMISSED.

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at

6

trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d. 1274, 1282 (11th Cir. 1999).  Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282.  The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.*  Instead, the evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

## IV.  DISCUSSION

### A.      Federal Claims under § 1983

Section 1983 provides a civil cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Under § 1983,

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and the laws,
> shall be liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but merely provides

"a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137,

144 n.3 (1979).  The plaintiff alleges violations of his Fourteenth Amendment rights to

substantive due process and equal protection and his Fourth Amendment protections against

unlawful arrest, unreasonable seizure, and malicious prosecution.

### 1.        Immunity of Individual Defendants

As a preliminary matter, the individual defendants assert that they are entitled to qualified

immunity.  Qualified immunity protects government officials performing discretionary functions

from suit in their individual capacities unless the official violates "clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S.

730, 739 (2002).  "The purpose of this immunity is to allow government officials to carry out

their discretionary duties without the fear of personal liability or harassing litigation, protecting

from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee

v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).

"Because qualified immunity is a defense not only from liability, but also from suit, it is

important for a court to ascertain the validity of a qualified immunity defense as early in the

lawsuit as possible."  *Id.* (citing *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1370

(11th Cir. 1998)).

To receive qualified immunity, the individual defendants "must first prove that [they were] acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Government officials act within the scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)).

Section 7-1 of the Birmingham Zoning Code specifically confers upon the Director of the PEP Department and all officers and employees of the City the duty of administering and enforcing the provisions of the zoning ordinance. Birmingham Zoning Ordinance § 7-1, *available at* http://permits.informationbirmingham.com/Zoning_Oridnance.pdf. Thus, the court finds that the individual defendants' actions in investigating the plaintiff's alleged zoning violation, issuing a warrant for his arrest for the alleged violation, and prosecuting him for his alleged violation were undertaken pursuant to the performance of their discretionary duties and within the scope of their authority as PEP Department employees.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The Supreme Court has articulated a two-part test to determine whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must ask this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v.*

9

*Katz*, 533 U.S. 194,  201 (2001)).  Second, "[i]f a violation could be made out on a favorable

view of the parties' submissions, the next, sequential step is to ask whether the right was clearly

established."  *Id.* (citing *Saucier*, 533 U.S. at 201).

      **a.**      **Substantive Due Process**

      The first constitutional claim that the plaintiff asserts is a violation of his Fourteenth

Amendment rights to substantive due process.  A substantive due process violation occurs when

the state's "conduct 'can properly be characterized as arbitrary, or conscience shocking, in a

constitutional sense.'" *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (quoting *County

of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks omitted)). To offend

due process, the conduct must be of the kind "that shocks the conscience" and violates the

"decencies of civilized conduct."  *Rochin v. California*, 342 U.S. 165, 172-73 (1952).  While

"the measure of what is conscience-shocking is no calibrated yard stick," the Supreme Court has

noted that "the due process guarantee does not entail a body of constitutional law imposing

liability whenever someone cloaked with state authority causes harm."  *Lewis*, 523 U.S. at 848-

49 (noting that "the Constitution does not guarantee due care on the part of state officials;

liability for negligently inflicted harm is categorically beneath the threshold of constitutional due

process").  Instead, the kind of state conduct that would "most likely . . . rise to the conscience-

shocking level" is any "conduct intended to injure in some way unjustifiable by an government

interest."  *Lewis*, 523 U.S. at 849.

      The plaintiff in this case asserts that the defendants conspired with Allison Glascock to

investigate and prosecute him for an alleged zoning violation without probable cause.  The

plaintiff also asserts that the defendants lacked probable cause to investigate him, because they

relied on an anonymous complaint about his alleged zoning violation without investigating the veracity of the complaint.  The defendants assert that they did have probable cause, because the defendant himself notified the PEP Department of his intent to use the premises for both a residence and a meeting place.  The defendants also assert that the use of anonymous complaints is reasonable and that the investigation and prosecution of the plaintiff for his alleged zoning violations does not shock the conscience. Further, the defendants note that the information they had received from both the plaintiff and Glascock confirmed the information received from the anonymous complainant.

In assessing whether the individual defendants' conduct constitutes a constitutional violation of substantive due process, the court notes that the Eleventh Circuit has provided some guidance as to what constitutes conscience-shocking conduct.  *See Tinker v. Beasley*, 429 F.3d 1324, 1329 (11th Cir. 2005).  In *Tinker*, the Eleventh Circuit found that two police officers, who were trying to solve a murder and bank robbery case, did not act in an outrageous, conscience-shocking manner by telling the prime suspect that her attorney had abandoned her, convincing her to sign a waiver of rights, and repeatedly interrogating her over the course of several days. 429 F.3d at 1329.  Though the police officers' conduct in that case directly implicated the suspect's right to counsel, the Eleventh Circuit determined that the officers' conduct was not sufficiently egregious "for constitutional recognition as a potentially viable substantive due process claim."  *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 432 (1986)).

Measuring the factual allegations in this case against the Eleventh Circuit precedent, the court finds that the defendants' actions do not rise to the level of egregious misconduct of the kind that shocks the conscience. If directly implicating a suspect's constitutional right to counsel

11

is not conscience-shocking in the Eleventh Circuit, the court fails to see how arresting and prosecuting a suspect based on probable cause supported by the suspect's own admission can amount to conscience-shocking conduct. Thus, the plaintiff has failed to allege facts sufficient to show that the defendants' conduct violated a constitutional right. The individual defendants, therefore, are entitled to qualified immunity as to the plaintiff's substantive due process claim and the substantive due process claim against them will be dismissed.

### b.      Equal Protection

The plaintiff also asserts a violation of his Fourteenth Amendment guarantee of equal protection. The purpose of the Equal Protection Clause of the Fourteenth Amendment is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (citing *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)) (internal quotation marks omitted). "[T]he Equal Protection Clause requires government entities to treat similarly situated people alike. Equal protections claims are not limited to individuals discriminated against based on their membership in a vulnerable class." *Campbell v. Rainbow City*, 434 F.3d 1306, 1313-14 (11th Cir. 2006). Rather, all individuals have a right to be free from discrimination at the hands of government officials. *Id.* at 1314.

To prevail on equal protection grounds, the plaintiff must show (1) that he was "treated differently from other similarly situated individuals" and (2) that the defendant "unequally applied a facially neutral ordinance for the purpose of discriminating" against him. *Id.* at 1314. The Supreme Court has also recognized that in "class of one" claims, an equal protection claim

12

may succeed "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The Eleventh Circuit has also noted that "as a 'general rule,' zoning decisions 'will not usually be found by a federal court to implicate constitutional guarantees.'" *Campbell*, 434 F.3d at 1313 (quoting *Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (per curiam)).

As to the first prong of the Eleventh Circuit's *Campbell* test, the plaintiff alleges that a caretaker had lived on the premises for many years prior to his purchase of the Highland Avenue property.  The plaintiff also alleges that defendant Janet Keasler initially informed him that, because the building had housed a live-in caretaker for so long, his property was "grandfathered in" to have a live-in caretaker.  The plaintiff also alleges that Keasler further informed the plaintiff that he could not be that caretaker "because [her] boss said so."  Thus, the court finds that, taken in the light most favorable to the plaintiff, the factual allegations do show that the defendants treated plaintiff differently from other similarly situated individuals.

As to the second prong of the Eleventh Circuit's *Campbell* test, the plaintiff alleges that the defendants unequally applied the facially neutral zoning ordinance for the purpose of discriminating against him and without any rational basis for doing so.  Specifically, the plaintiff asserts that the defendants singled him out as unqualified under the caretaker exception because he chose to challenge Allison Glascock in the HPNA presidential election.  The defendants allege that they investigated and prosecuted the plaintiff's alleged zoning violation in the course of carrying out their duty to administer and enforce the zoning ordinances.  The defendants also assert that the plaintiff himself gave them probable cause for the investigation because of his

13

repeated conversations with the PEP Department regarding his plans to use the meeting place as a dwelling and his plans to install a residential elevator in the building.  The defendants further allege that Glascock's unsolicited emails regarding her troubles with the HPNA elections were irrelevant to their investigation and prosecution of the plaintiff, because the plaintiff himself provided them with probable cause to investigate his situation.

The court determines that the defendants had a rational basis for investigating and prosecuting the plaintiff, because the plaintiff himself notified the PEP Department of his intentions to use the property as both a dwelling and a meeting place.  Thus, the court finds that the plaintiff has not established a discriminatory purpose for the defendants' actions.  Thus, the court finds that the plaintiff has not established for summary judgment purposes that the defendants unequally applied the zoning ordinance for the purpose of discriminating against him. Further, the court determines that the plaintiff has not established a violation of his constitutional right to equal protection.  Accordingly, the defendants are entitled to qualified immunity as to the equal protection claim, and the equal protection claim against them shall be dismissed.

### c.    False Arrest

The plaintiff also alleges that the defendants violated his Fourth Amendment rights by executing a warrant for his arrest without probable cause. An arrest in the home, as in this case, must be authorized by a warrant to satisfy the Fourth Amendment.  *McClish v. Nugent*, 483 F.3d 1231, 1238 (11th Cir. 2007).

If a search or seizure is conducted under the authority of a warrant, the party challenging the search or seizure carries the burden of showing the warrant to be invalid and not properly based on probable cause.  *United States v. de la Fuente*, 548 F.2d 528, 534 (5th Cir. 1977);

14

*Batten v. United States*, 188 F.2d 75, 77 (5th Cir. 1951).[2]  Furthermore, "an officer must conduct a constitutionally sufficient investigation before making an arrest."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-30 (11th Cir. 2004).  A government official "violates the Constitution if, in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth."  *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994).  Officials need not explore every proffered claim of innocence, but they "may not ignore exculpatory information of which they are actually aware in deciding whether to arrest." *Smith v. Greenlee*, No. 08-10405, 2008 WL 3523999, at *3 (11th Cir. Aug. 14, 2008).  Qualified immunity "does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff."  *Holdmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (citations and internal quotation marks omitted).

The plaintiff contends that, though a warrant was executed for his arrest, the arrest was improper nonetheless because the warrant was not supported by probable cause.  In support of this argument, the plaintiff asserts that the defendants failed to verify the anonymous tip that he was in violation of a zoning ordinance.  The plaintiff admits to residing at the Highland Avenue property as the "resident caretaker."  The plaintiff himself spoke with the defendants about his plans to reside on the premises and install a residential elevator, which he received a permit from the PEP Department to install.  The defendants, therefore, argue that the plaintiff himself provided them with probable cause that he was in violation of the zoning ordinance, which

---

[2] After the Fifth Circuit split and the Eleventh Circuit was established, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

prohibits dual uses of the property.  Allison Glascock did notify the defendants that she believed the plaintiff was not actually residing at the Highland Avenue property and gave the defendants what she believed to be the plaintiff's actual address.

This information does not defeat probable cause; the plaintiff himself notified the defendants of his dual use of the property, which is enough to give the defendants a reasonable belief that the plaintiff was in violation of the zoning ordinance.  *See Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992) (finding that, where police had some conflicting physical evidence as to whether a crime had been committed, probable cause still existed because the police "had reason to believe that a crime had been committed and that evidence would be found at the premises to be searched").  Furthermore, that the plaintiff was ultimately found not guilty of a zoning violation does not defeat probable cause.  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (citing *Von Stein v. Brescher*, 904 F.2d 572, 578 & n.9 (11th Cir. 1990) ("'Probable cause' defines a radically different standard than 'beyond a reasonable doubt,' and while an arrest must stand on more than suspicion, the arresting officer need not have in hand evidence sufficient to obtain a conviction.")).

The court determines, taking the factual allegations in the light most favorable to the plaintiff, that the plaintiff has not carried his burden of establishing that the defendants executed a warrant against him without probable cause.  As such, the plaintiff has failed to establish a violation of his Fourth Amendment rights to be free from unlawful arrest and the individual defendants are entitled to qualified immunity.  *See Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) ("Only where the warrant application is so lacking in idicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.").  Thus, the false

arrest claim against them shall be dismissed.

     **d.**    **Unreasonable Seizure**

The plaintiff also alleges that the defendants unreasonably seized him, in violation of his Fourth Amendment rights, by causing him to be arrested without probable cause and imprisoned on charges for which he was ultimately found not guilty. The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To establish a Fourth Amendment violation, the plaintiff "must demonstrate that a seizure occurred and that it was unreasonable." *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997) (citing *Bower v. County of Inyo*, 489 U.S. 593, 599 (1989)). A seizure occurs, for Fourth Amendment purposes, "only when, by means of physical force or a show of authority, [a person's] freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 555 (1980). The restraint of freedom must be effectuated "through means intentionally applied"; "[t]he unintentional consequences of lawful government action cannot form the basis for a Fourth Amendment violation." *Evans*, 117 F.3d at 1321 (citing *Brower*, 489 U.S. at 596).

The plaintiff contends that by arresting and detaining him, the defendants unreasonably seized him in violation of his Fourth Amendment rights. Taking the factual allegations in the light most favorable to the plaintiff, he has established that a seizure occurred, because he was arrested and detained for a short time at the police station. As already discussed *supra*, however, the plaintiff has failed to establish that the defendants' execution of a warrant against him was unlawful. As such, the seizure of the plaintiff pursuant to the lawfully executed arrest warrant was reasonable. As such, the plaintiff has failed to establish that the individual defendants

17

violated his constitutional right to be free from unreasonable seizures.  Accordingly, the individual defendants are entitled to qualified immunity as to the unreasonable seizure claim and the unreasonable seizure claim against them will be dismissed.

      **e.**    **Malicious Prosecution**

The plaintiff alleges that the defendants violated his Fourth Amendment rights by maliciously charging and prosecuting him for a crime for which he was ultimately found not guilty.  To prove a malicious prosecution claim under the Fourth Amendment, the plaintiff must show "(1) a criminal prosecution instituted or continued by the present defendant[s]; (2) with malice and without probable cause; (3) that terminated in the plaintiff['s] favor; and (4) caused damages to the plaintiff." *Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003).  Furthermore, "[b]ecause lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause defeats the claim." *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008).

The plaintiff contends that the defendants maliciously prosecuted him for a zoning violation for which they had no probable cause to believe he committed and for which he was ultimately found not guilty.  As this court has already determined, the defendants had probable cause to investigate, arrest, and prosecute the plaintiff for a zoning violation. The plaintiff himself admitted and continues to admit to residing at the Highland Avenue property.  The zoning ordinance specifically limits any residential use of the property to *accessory* residential uses for live-in caretakers.  The defendants had probable cause to believe that the plaintiff's residence in a building that he owned was not "accessory" to the use of the building by AFWC.  Thus, the plaintiff has failed to establish that the prosecution against him was instituted with

18

malice and without probable cause.  The court, therefore, finds that the plaintiff has failed to

establish that the defendants violated his Fourth Amendment rights to be free from malicious

prosecution and that the individual defendants are entitled to qualified immunity as to that claim.

      2.     **Municipal Liability**

Like the individual defendants, the City of Birmingham asserts that it cannot be held

liable on the plaintiff's claims under § 1983.  The City of Birmingham may be liable under §

1983 for the actions of its agents and officers "only when municipal 'official policy' causes a

constitutional violation."  *Gold v. City of Miami*, 151 F.3d 1346 (11th Cir. 1998).  A municipality

may not be held liable for its employees' actions under a respondeat superior theory.  *Mercado v.*

*City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005) (citing *Samples v. City of Atlanta*, 846

F.2d 1328, 1333 (11th Cir. 1988)).  "It is only when the execution of the government's policy or

custom . . . inflicts the injury that the municipality may be held liable."  *City of Canton v. Harris*,

489 U.S. 378, 385 (1989) (internal quotation marks omitted).  Thus, "to impose § 1983 liability

on a municipality, a plaintiff must show: (1) that [his] constitutional rights were violated; (2) that

the municipality had a custom or policy that constituted deliberate indifference to that

constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*,

392 F.3d 1283, 1289 (11th Cir. 2004).

Applying the Eleventh Circuit's *McDowell* test to the facts of this case, the court has

already determined that the plaintiff's factual allegations do not state any constitutional

violations.  Thus, the court need not reach the question of whether the alleged custom or policy

of the City of Birmingham in acting on anonymous complaints contributed to the events in this

case, because the plaintiff has not established the first *McDowell* element.  The court, therefore,

determines that the plaintiff has not satisfied the Eleventh Circuit's *McDowell* test and that the City of Birmingham cannot be held liable to him under § 1983.  Accordingly, the § 1983 claims against the City of Birmingham will be dismissed.

**B.     Federal Claims under ADA and FRA**

In addition to his constitutional claims under § 1983, the plaintiff also asserts claims under Title II of the Americans with Disabilities Act (ADA) and § 504 of the Federal Rehabilitation Act (FRA).  The plaintiff asserts that the City of Birmingham, City Jail, and police officers failed to properly accommodate his disability in transporting and detaining him and that they failed to provide handicap accessible restroom facilities at the City Jail.  The defendants do not deny that the City Jail does not have adequate facilities or services for handicapped detainees. As such, no genuine issues of material fact remain; the only question remaining is whether the defendants are entitled to judgment as a matter of law as to the claims under ADA and FRA.

As a preliminary matter, the plaintiff asserts his ADA and FRA claims against the City of Birmingham and the City Jail; the individual defendants are not named and no wrongdoing on their part is asserted in either the ADA or FRA claims.  The court, therefore, dismisses the ADA and FRA claims as to the individual defendants to the extent the complaint asserts such claims against them.

The City of Birmingham asserts that the Settlement Agreement between the United States and Birmingham, Alabama, DJ 204-1-58, immunizes the City from such claims.  The Settlement Agreement covers all of the plaintiff's claims of ADA compliance issues at the City Jail. Further, the Settlement Agreement specifically reserves to the U.S. Department of Justice the right to review the City's compliance with the Settlement Agreement and initiate civil action if

the City violates the Settlement Agreement.  These provisions suggest that the parties to the

Settlement Agreement intended for the Department of Justice to retain for itself the duty of

ongoing supervision and enforcement of the Settlement Agreement and did not intend for the

beneficiaries of the Settlement Agreement, such as the plaintiff, to have that ability.  *See*

*Dahlberg v. Avis Rent A Car System, Inc.*, 92 F. Supp. 2d 1091, 1107 (D. Colo. 2000) ("Where . .

. the Government enters a consent decree for the benefit of third parties in a general sense,

enforcement of the consent decree generally is limited to the contracting parties because in such

circumstances the numerous third-party beneficiaries are assumed to be merely incidental

beneficiaries without rights of enforcement."); *see also Rafferty v. NYNEX, Corp.*, 60 F.3d 844,

849 (D.C. Cir. 1995) ("Unless a government consent decree stipulates that it may be enforced by

a third party beneficiary, only the parties to the decree can seek enforcement of it."); *Hook v.*

*State of Ariz., Dep't of Corrections*, 972 F.2d 1012, 1015 (9th Cir. 1992).

The plaintiff seeks compensatory damages and an injunction against the City of

Birmingham commanding it to remedy the ongoing violations of the ADA and FRA.  The court

finds that the plaintiff's prayer for injunctive relief is moot, because the Settlement Agreement

between the City of Birmingham and the United States already commands the City to remedy the

same violations of the ADA and FRA.  Additionally, compensatory damages are only

recoverable under the ADA and FRA where the plaintiff has demonstrated "intentional

discrimination or bad faith."  *Wood v. President & Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1219

(11th Cir. 1992).  The plaintiff has not established that the City intentionally discriminated

against him or acted in bad faith with discriminatory animus.  On the contrary, the City has made

an agreement with the United States Government, acknowledging the shortcomings in its

facilities and services and agreeing to remedy all ADA and FRA violations within three years of the effective date of the agreement. The court, therefore, determines that the plaintiff has failed to establish a claim for relief under the ADA and FRA and that the defendants are entitled to summary judgment as to those claims.

**C.     State Law Claims**

Pendent to his federal statutory and constitutional claims, the plaintiff also asserts claims of wrongful arrest, false imprisonment, invasion of privacy, intentional infliction of emotional distress, conspiracy, and negligence under Alabama state law.  The court notes that all of the plaintiff's federal claims have been dismissed, thereby eliminating this courts jurisdiction under 28 U.S.C. §§ 1331 and 1343.  Because the court has granted summary judgment on all the claims giving rise to federal jurisdiction, it has the discretion to decide whether to exercise supplemental jurisdiction over the remaining state claims.  The United States Supreme Court has noted that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  The Eleventh Circuit has also noted that "[t]he decisions to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) (citation omitted).  The court follows the encouragement of the United States Supreme Court and the Eleventh Circuit and dismisses the plaintiff's state law claims.

**V.  CONCLUSION**

The plaintiff concedes dismissal of his conspiracy and intentional infliction of emotional

distress claims against the City of Birmingham.  He also concedes dismissal of his procedural due process and negligent supervision claims against all defendants.  Accordingly, the court will DISMISS those claims.

The court finds that the individual defendants are entitled to qualified immunity as to the plaintiff's constitutional claims under § 1983, because the plaintiff has failed to establish any constitutional violation.  Accordingly, the court GRANTS the individual defendants' motion for summary judgment as to the plaintiff's substantive due process, equal protection, false arrest, unreasonable seizure, and malicious prosecution claims.

The court determines that the City of Birmingham cannot be held liable to the plaintiff under § 1983, because the plaintiff has failed to establish any constitutional violations. Accordingly, the court GRANTS the City's motion for summary judgment as to the § 1983 claims against the City of Birmingham.

As to the plaintiff's ADA and FRA claims, the court GRANTS the individual defendants' motion for summary judgment, because the court finds that the plaintiff has failed to name or allege any wrongdoing on the part of the individual defendants in relation to his claims under the ADA or FRA.

The court GRANTS the City's motion for summary judgment as to the plaintiff's claims under the ADA and FRA, because the court determines that the plaintiff has failed to establish a claim for relief under the ADA and FRA against the City of Birmingham.

As to all the state law claims, the court declines to exercise jurisdiction over them and they will be DISMISSED.

DONE and ORDERED this 25th day of September, 2008.

KARON OWEN BOWDRE

UNITED STATES DISTRICT JUDGE